And we move to the final case this morning, United States v. Henshaw. Good morning, Your Honors. Again, my name is Jim Cutchin, and I represent the government in this appeal as well. At issue in this case this morning is whether a variance of 151 months to probation was reasonable in this case, where the defendant, Mr. Henshaw, was serving two separate conditional discharge sentences for drug trafficking offenses at the time he committed the incident offenses, drug trafficking offenses underlying this case. In July of 2015, an individual named Corey Pryor, who was Mr. Henshaw's marijuana supplier, contacted a confidential source and advised that source that Mr. Henshaw wanted to purchase a large quantity of cocaine. The confidential source had acted... May I stop you? Sure. Henshaw's prior marijuana trafficking convictions were imposed on the second day. They were, Your Honor. From a pragmatic perspective, does their proximity in time to one another suggest that Henshaw really wasn't the kind of career drug offender for whom the enhancement under 4B.1.1 is appropriate? Your Honor, I don't believe that's the case because they were imposed in separate counties involving... The first was in Jackson County, set forth in paragraph 33 of the PSR in February of 2010. So he was arrested for that offense and released on bond. And then eight months later, or a little over eight months later, in October of 2010, he was convicted in a separate county of a trafficking offense. And while sentences were imposed on the same day, they were certainly not close in time in terms of, I think, going towards what the court is asking. I don't believe that that would be a proper characterization of those two offenses. Now, you know, you claimed in the brief that he repeatedly minimized his involvement in the underlying cocaine transaction. Did you ever tell the district court that he had minimized his involvement? Your Honor, at sentencing, the government did not pursue that argument with the district court. In fact, at sentencing, you hadn't prepared a sentencing memo. Did you object when the judge characterized his decision to test the cocaine as simply a boneheaded mistake? That's how the district court characterized it. That's true. And to Judge Durkin's point, yes, there's no secret the government could have done more at sentencing in this case. However, that doesn't mean that the sentence that was imposed becomes reasonable just for that offense. And primarily that's why the reason, I think, as the court would see in the brief, that the government's not arguing that the district court, based on the record in this case, lacked the ability or discretion to vary at all. It's simply saying that the extent of the drastic variance, 151 months to probation on the facts of this case, is inappropriate. And to the point that the court is raising about the characterization of the conduct underlying Count 1 of the indictment involving cocaine transaction, that says nothing about the defendant's involvement in Count 2. By his own admission, on two recorded statements, he had been involved for a long time in the distribution of, following his convictions and guilty pleas and sentence in the conditional discharge case, he continued to be involved in the trafficking of marijuana. He had, at that time, owed, at the time of his arrest, owed Mr. Pryor $30,000 for 30 pounds of marijuana that he had distributed to others over the previous six months, and at a search in his residence, another $55,000, $42,000, at least of which he admitted, were proceeds from his drug trafficking. So, it would not be correct, regardless of what one thinks about how to characterize his involvement with regard to the cocaine transaction, there can be no doubt that he was heavily involved in the distribution of marijuana, and that factor really got no mention in the district court's determination to vary from the guidelines. Are you challenging the procedural reasonableness? Obviously, the substantive reasonableness I understand you're challenging. Are you also challenging the procedural reasonableness of the sentencing? Well, Judge, that touches on a confusing area of the law in the circuit. The Solicitor General believed that because the government was conceding that the court, based on the facts, certainly could vary to some degree, and that really we were talking about the extent of the variance, that it was better characterized as substantive reasonableness. I understand that the court in other cases has looked at that as procedural reasonableness, and regardless of what label you put on that, the government's argument is, and is contained in the brief, is that the reasons the court gave for imposing the sentence that it ultimately imposed were insufficient. So, whatever label you put on that, that's the government's argument. The career offender finding, even if the district judge is ruling that she didn't believe the career offender, the prior convictions didn't justify a career offender type of guideline, are you still challenging the, instead of 151 months down to probation, it would be 57 months down to probation, which is what the defense lawyer asked for, 57 months. Do you still believe it was unreasonable, if we were dealing with a range of probation to 57 months, that that was an unreasonable sentence? Well, Your Honor, first I would say the government has always maintained that a 151 month sentence would be the appropriate sentence. But I understand that this court's prior precedent says that reasonableness is gauged not at a point, but at a range, and the government certainly understands that had the court sentenced him to, in the non-career offender range, or some point in between that, it would certainly face a much more difficult task in convincing this court that that was unreasonable. As we set forth in the reply brief, I don't think it automatically follows just because you disagree, or a sentencing court disagrees with the career offender guideline, that it automatically goes to the non-career offender. Because Mr. Henshaw, in this case, is in a different position than someone who has criminal history points for other things, not drug trafficking offenses, and certainly defendants who weren't on two separate terms of conditional discharge for that very type of offense. So I don't think it automatically follows, but I would allow that the government would have a much more difficult time in convincing the court that such a sentence, as the one that he recommended, or somewhere in between that and the career offender, would be unreasonable. The district courts, as Judge Durkin pointed out, it appeared that the district court's primary reason for varying was this disagreement with the career offender guideline. A couple of things about that, while the district court and the government certainly concedes that the district court can disagree on policy grounds with the guideline, and vary, it still must do so reasonably, and the government doesn't believe that a 151-month variance is reasonable. It's interesting that in citing its disagreement or its policy disagreements with the sentencing commission, the district court talked about a lack of empirical study that was involved in the formulation of the career offender guideline. The empirical evidence in this case is that Mr. Henshaw has a long history of drug dealing and committing other offenses, and that lenient sentences of probation or probationary type sentences don't do anything to deter him. That's the empirical evidence. But the district court opted not to follow that empirical evidence, the very thing that it disagreed with the sentencing commission or with Congress on, and instead, quoting from the sentencing transcript, decided to go with its gut that imposing probation in this case was not wrong. We don't believe that for all the other reasons cited in our brief, especially, or in addition, the district court's major concern cited in sentencing this defendant was that he had failed to comply with probation or probationary type sentences before, and shown a disrespect for the law. The government's at a loss from reading the record of how one could consider yet another sentence of the same type to address that major concern. How many times had he been placed on probation previously? Your Honor, as set forth in the PSR, he had the two conditional discharge sentences for the drug trafficking offenses. He, not counting the juvenile adjudication that he had, he had been placed on probation in 2004 for assault. That was an aggravated assault involving a firearm that was pled down. He was violated on that. But did it bring that misdemeanor assault conviction to the court's attention at sentencing or otherwise argue that he had some kind of violent criminal history? Did you? The assistant U.S. attorney at sentencing did not do that. He relied on the information contained in the PSR, which the court found as its findings of fact. Could I finish my answer to the court's question? Yes. So he had that conviction of assault, which was revoked, and sentenced to 87 days in jail. He had another felony drug possession of cannabis for which he received two years incarceration and was paroled. He had a number of driving on revokes that he received conditional discharge or probation, for which most of the time he did not successfully complete. And then he had the conditional discharge sentences that we previously spoke about. But at the time of sentencing, he'd been out on bond for nearly a year. The district court was entitled to take into account his excellent performance on bond when determining if he would comply with the conditions of this probation, right? Well, I think there's a broad range of information that the district court can take into account. I don't think that the court wants to set up the standard that just because someone does what they're supposed to on bond that that negates the punishment that goes along with the types of offenses that he was convicted of in light of his prior record. And really, at bottom, that's what is missing from this sentence and what's required under Section 3553A is an element of punishment. And for someone that is twice convicted of drug offenses under those sentences at the time he commits this offense, in the government's view, those factors, the punishment factor is simply not adequately addressed by a sentence of probation. Thank you. My question was answered. Thank you. Thank you. Thank you. May it please the court, the sentence imposed below was reasonable. A district court must take meaningful consideration of the factors listed in Section 3553A. It need not discuss each and every factor listed there, and it may assign different weight to different factors in a given case. A party's disagreement with the weight that's given to a particular factor will not suffice to reverse, and a party may not complain on appeal that the sentence below failed to take into account adequately a given factor when the argument was not made below. But that is precisely what the government asks you to do here today. It tells you, as it did a moment ago, that the weight given to punishment was insufficient by the district court below. Though at sentencing, the government offered a single sentence in support of its argument, and that sentence contained no facts on the case and did not emphasize any particular factor listed at 3553A. Are you arguing they waived the ability to raise on appeal the fact that the sentence was unreasonable? No. They just came up with a one-liner at sentencing, which was all they did? No. I'm arguing that it's rather ironic that today they complain about a district court's failings in explaining or weighing particular factors when it made no argument in support of anything below except a guideline sentence because that's all it said. I won't quote from the transcript, but the government simply said, we have nothing to indicate a below-guideline sentence is appropriate. The defendant appears to have been compliant on bond. We ask for a low-end guideline sentence. That was the sum and substance of the argument below. Do you think the government should be given any leeway for its failure to raise particular factual challenges in the district court because the district court's drastic departure was so unexpected to both parties? A couple of things about that, Your Honor. The government raised the unexpected nature of the outcome, and in particular my assessment of a sentencing outcome that might be reasonable in its opening brief. I didn't respond in writing because my thought process as to the sentence to recommend before the district court is not record evidence. But if the court cares for an explanation, I'd be happy to give it one because I do believe the sentence that was imposed was reasonable, and it is a reason that I asked for 57 months rather than probation, though I believe probation is an eminently reasonable sentence and that the court was perfectly within its rights to impose that sentence. I don't believe that the government should be given any leeway for failing to make any argument below because it had a chance to point out these same arguments with respect to a 151-month sentence or a 121-month sentence or an 87-month sentence or a 57-month sentence, but it chose not to do so, and in fact what it chose to do was offer a single sentence. It made no effort, and today asks you, based on that failing, to completely undo what the district court did when she went through all these factors in a meaningful way, as the courts require, giving weight to factors she thought was appropriate, as she's entitled to do. Where did she discuss general deterrence ever in her explanations? In the beginning, she said, at the beginning of the transcript, the court talks about the predicates, the predicate convictions, the marijuana offenses that led to the career offender finding and indicated that he had not done well on bond and that he had been living a life that had been devoted to marijuana dealing in the past. Well, that was pointing out the obvious, but she never, I didn't, at least I didn't see it, maybe I misread it, but I didn't see an explanation on how the purposes of general deterrence are served by giving someone probation when they commit violations while on probation. So, I don't know that there's an explicit conversation about that, but again, the court has been clear in prior cases that the court does not need to discuss each and every factor in detail. I think that the court found more important the career offender guideline, and in particular focused really on rehabilitation, not explicitly. There's no conversation where the judge says, I am now focusing on rehabilitation, but what you see the court do is this. You say that, what about punishment? So, punishment was apparently a goal that the court thought that was less important than other goals in this particular case, and this court's own case law suggests that that is appropriate in the case. A court can select a particular factor to give greater weight to if it chooses to, and in this case, apparently, the court thought that punishment was not a factor that deserved the greatest amount of weight. I think the court decided that because it looked at the nature of the prior offenses, the role and the offense that Mr. Henshaw played that the court concluded was accurate in this particular case, and noted the following. He had had a difficult childhood that the government characterized as routine. Well, I know, but everybody that comes in, not everybody, many people who come in have difficult childhood, are abused by their parents, weren't abused, but it doesn't make any difference. What about violating it, doing the same offense while you're on probation? So, I think the judge can take that into consideration, but I think what she thought was more important, and I think the court is a, so, Your Honor, I think when the court, I see I have very little time left, when the court focuses on Mr. Henshaw's history and says everyone or many people who come in here have histories that are similar, yes and no, I venture to guess likely none of us have a childhood that was similar to his. Not only was he... No, but you'd be surprised how many people have come before this court with the same argument that appear before a sentencing judge describing, and properly, the bad childhood they had. Well, I've done this for a while, so I've had clients with bad childhoods, but they're not all quite like Mr. Henshaw's either. But I think what's important is not just that he had a bad childhood, but what he had done in that last year to turn that around. So, in that last year he had voluntarily undergone therapy and counseling. In that last year he had found employment for the first time in his life. In the appendix that we submitted at A9 through 12 are letters from the employer. Did you... Forgive me? Nothing. Letters from the employer, letter from the counselor, all of whom talk about the type of person he is and what he has done with himself in that time. Going back to the sentence, the government keeps saying 151 months down to probation was not appropriate based on the career offender guideline. I think the way to view the sentence is as follows. With the career offender guideline, he was at 151 to 188. Going off the career offender report, that would drop to 57 to 71 months. Fifty-seven months, which is the low end, would not be unreasonable. At that point, the court is looking for a way to get from 57 months down to probation, looking at his role in defense, which was unique to say the least. Well, that's on count one. What about count two? There was no addressing of count two by the sentencing judge. Again, it would be interesting if the government had raised that issue, but I can tell you why I think that was of lesser importance to the court. This is, of course, my own estimation of what happened below. Under the guidelines, as the court likely knows, counts one and two would group because they're both drug offenses. In order to accomplish the grouping procedure, the guidelines would use the marijuana equivalency and transform the cocaine and the marijuana both into marijuana and aggregate them. When you look at the cocaine, the cocaine equivalency with marijuana is one gram of cocaine equals 200 grams of marijuana. The one kilogram of cocaine would equal 200 kilograms of marijuana as a result. If you look at the marijuana that was taken from Mr. Henshaw's home, that would transform that to 200.7 kilograms. So that 0.7 kilograms to the entire net of the marijuana equivalency. When you added the relevant conduct, it would rise it to 213 kilograms. So that 13 kilograms would have zero impact on the guideline range. But that ignores the reality that he was a marijuana dealer. He possessed it with intent to distribute. He did it while he was on probation on two separate probations from different counties. That's correct. And it was never addressed in the sentencing remarks by the judge. So fair enough. So it wasn't addressed in the way that the court indicates. I completely agree with that. And that conversation is a conversation that would have been wise to have had below. So if the government thought that those arguments were important to make below, it should have made those arguments below. But it didn't. So we're making them here today so this court can supplant its decision for the decision of the court below. The government had an opportunity to make all of these arguments. And if the court reverses and remands it for resentencing, we'll go back and make those arguments. My arguments will be stronger at that point than they were originally. Mr. Henshaw is here in the court today. He's watching this. Mr. Henshaw, non-record evidence, Mr. Henshaw is doing a wonderful job. Mr. Henshaw is doing a wonderful job. I really want to get this question in. Do we know from the record if Mr. Pryor was new to selling cocaine? Is there any reason ever suggested as to why he would have recruited Henshaw to test the cocaine before he purchased it? Not in the record, Judge Roebner. I see my time is up. You can answer Judge Roebner's question if you can. I did. Not in the record. Not in the record. Okay. Thank you. Thank you, Your Honor. Thank you, counsel. You don't have any time left, but I'll give you a minute. I'm sorry. I'll give you a minute. Your Honor, I was just going to follow up on Judge Roebner's question. I believe in the PSR it indicates that the CS was a prior cocaine supplier to Pryor. That was confusing. He had sold cocaine previously to Pryor, so there is an indication in the record that Mr. Pryor had been involved previously in the distribution of cocaine, and there's no clear indication of why Mr. Henshaw would have been necessary solely to test the cocaine at issue. Unless the court has any other questions, I know my time is expired. I have one. Is it the practice of the Southern District, the U.S. Attorney's Office of the Southern District, not to submit a sentencing memorandum to the sentencing judge? No, Your Honor. That is not consistent with the policies that they usually follow. I can't say that one gets submitted in every case. I think it depends on the type of case. I've never had a sentencing as a district court judge where I've not received something from the U.S. Attorney's Office indicating their expression of the 3553A factors and why a particular sentence is justified. And I believe the policy of the U.S. Attorney's Office for the Southern District is to do that. Again, I'm trying to be as honest as I can with the court. I can't say that that occurs in every case, especially if there's a plea agreement and an agreed recommendation as to the range. But that, I believe, is the policy of the U.S. Attorney's Office for that. Thank you, Your Honor. Thanks to both counsel. The case will be taken under advisement. And the court stands in recess. Thank you.